Roberta MASCO, Joanne McMullen, Janet Martin and Nancy Deliman

v.

**UNITED AIRLINES.**

**Appeal of UNITED AIRLINES, INC.**

**No. 77–1931.**

United States Court of Appeals, Third Circuit.

Argued March 28, 1978.

Decided April 17, 1978.

As Amended May 11, 1978.

**1128**

Clyde W. Armstrong, Thorp, Reed & Armstrong, Pittsburgh, Pa., for appellant.

J. Jerome Mansmann, Robert J. Cindrich, McVerry, Baxter, Cindrich, Loughren & Mansmann, Pittsburgh, Pa., for appellees.

Before ALDISERT, GIBBONS and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

United Airlines appeals from district court orders providing reinstatement to employment and back pay for the four female appellees, who were allegedly discriminated against by United because of their gender. After a nonjury trial, the district court found that United had discriminatorily terminated appellees' terms of employment after they became pregnant. The court agreed with appellees' theory, pressed again on appeal, that once they were separated from employment under an allegedly unlawful plan, each subsequent failure by United to rehire them was a separate and distinct act of discrimination within the meaning of Title VII of the Civil Rights Act of 1964, *as amended,* 42 U.S.C. § 2000e *et seq.*[1]

Because we believe that the recent Supreme Court decision in *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), mandates a determination that the individual appellees did not file their original employment complaints with the Equal Employment Opportunity Commission [EEOC] in a timely fashion as required by 42 U.S.C. § 2000e–5(e),[2] and

---

1. 42 U.S.C. § 2000e–2 provides in relevant part:

    It shall be an unlawful employment practice for an employer—

    (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

    (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

2. The relevant portion of 42 U.S.C. § 2000e–5(e) provides:

    A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter

    . . . .

that the district court accordingly should have dismissed the action as time-barred, we reverse.

## I.

Appellees Roberta Masco, Joanne McMullen, Janet Martin, and Nancy Deliman were employees of United Air Lines who took maternity leave during the course of their employment in 1970. Pursuant to United's mandatory maternity leave policy, later discontinued, each appellee was to be reinstated when her leave ended only if a position in her former department was available.[3] At the same time the maternity leave policy was in effect, United maintained a separate policy of granting leaves of absence for illness or injury, under which an employee on leave retained his or her position, seniority, and job classification. Under this type of leave, the employee was guaranteed a return to employment without loss of benefits.

Because no positions in their former departments were available when they wished to return to work, each appellee was denied reinstatement, i. e., separated from employment, at the end of her maternity leave. The date of separation for each appellee was determined by the district court to be as follows: Masco, June 24, 1970; McMullen, September 25, 1970; Martin, September 23, 1970; Deliman, August 18, 1970.[4] After numerous unsuccessful requests that United rehire them, each appellee filed employment discrimination charges with the EEOC: Masco, on August 12, 1973; McMullen, on June 6, 1973; Martin, on August 22, 1973; and Deliman, on October 24, 1973.

Right-to-sue letters were subsequently issued to each of them, and they brought the present action in the district court on October 17, 1974.

In its opinion of September 14, 1976, the district court determined that appellees had established "a prima facie case of discrimination by showing the different treatment given to pregnancy leave as compared to temporary disability leaves."[5] District Court Opinion at 11.

## II.

As originally enacted, what is now section 706(e) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(e), provided that ."[a] charge under this section shall be filed within ninety days after the alleged unlawful employment practice occurred . . ." The limitations period was extended to 180 days by amendment of March 24, 1972.

It is clear that appellees did not file their original complaints within 180 days of their separation from employment. The district court addressed this problem by referring to this court's decision in *Jurinko v. Edwin L. Wiegand Co.,* 477 F.2d 1038 (3d Cir.), *modified and remanded on other grounds,* 414 U.S. 970, 94 S.Ct. 293, 38 L.Ed.2d 214 (1973), which it read as support for the contention that "each denial of requests for reemployment after termination is a separate discrimination for the purpose of the [statutory period]." District Court Opinion at 10. We do not so read *Jurinko.* And because appellees did not present the appropriate evidence that would bring them within the *Jurinko* rule, we hold that the

---

3. No guarantee of return, retention of seniority or classification, or accrued seniority was afforded to females on maternity leave under the old policy. In April 1971, United revised its non-union maternity leave policy so that all pregnant employees would be guaranteed a position upon expiration of their leave, and would accrue company seniority during their leave. Stipulation of the Parties, Item III.

4. There is a slight (not more than three days) variance between these dates and some of those presented by the parties in their briefs. The variances are not sufficient to have any impact on our disposition of this appeal.

5. We note that the district court issued its opinion without benefit of *Evans, supra,* which was decided on May 31, 1977. It is not to be faulted for failing, in Learned Hand's words, "to embrace the exhilarating opportunity of anticipating a doctrine which may be in the womb of time, but whose birth is distant." *Spector Motor Service, Inc. v. Walsh,* 139 F.2d 809, 823 (2d Cir.) (Hand, J., dissenting), *vacated,* 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101 (1944).

Supreme Court's decision in *Evans, supra,* mandates a contrary conclusion in the present appeal.

### A.

In *Evans,* a female flight attendant whose employment had been terminated in 1968 by United under a later invalidated no-marriage policy was rehired by United four years after her separation but was refused credit for her former seniority. Recognizing that it was too late to obtain relief based on an unlawful termination which occurred in 1968, Evans alleged that United was guilty of a "present, continuing violation of Title VII and therefore that her claim [was] timely." 431 U.S. at 557, 97 S.Ct. at 1888. The Court was thus presented with the question whether United's refusal to credit her with seniority constituted a second, separate violation.

In a crucial passage, the *Evans* Court stated:

Respondent is correct in pointing out that the seniority system gives present effect to a past act of discrimination. But United was entitled to treat that past act as lawful after respondent failed to file a charge of discrimination within the 90 days then allowed by § 706(d). A discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed. It may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences.

Respondent emphasizes the fact that she has alleged a *continuing* violation. United's seniority system does indeed have a continuing impact on her pay and fringe benefits. But the emphasis should not be placed on mere continuity; the critical question is whether any present *violation* exists. She has not alleged that the system discriminates against former female employees or that it treats former employees who were discharged for a dis-

criminatory reason any differently than former employees who resigned or were discharged for a non-discriminatory reason. In short, the system is neutral in its operation.

*Id.* at 558, 97 S.Ct. at 1889 (footnote omitted).

In *Jurinko,* this court was presented with a claim that an employer, on three separate occasions, had refused to employ two persons because they were married women. The employer urged that because the employment charge against it was not filed within the prescribed time after the *initial* refusal, the district court lacked jurisdiction over the action. This court disagreed, observing that "there were three separate and distinct acts, the latter of which occurred within the [statutory] period. Therefore [that] period commenced to run anew from the last allegedly unlawful employment practice." 477 F.2d at 1042.

### B.

Appellees contend on appeal that, rather than relying upon a "continuing violation" theory, they have proved that United's refusals to reinstate them constituted separate and distinct acts of discrimination, as in *Jurinko.* This view overlooks the crucial necessity, elucidated in *Evans,* of identifying the actual violation(s) which occurred. "The critical question," in the words of *Evans,* "is whether any present *violation* exists." 431 U.S. at 558, 97 S.Ct. at 1889.

Simply put, the violations giving rise to the present action were appellees' respective separations from employment. As in *Evans,* United was entitled to treat those past acts of discrimination as lawful after appellees failed to file charges within the prescribed time period. We are nevertheless quick to note that the rationale of *Jurinko* maintains continued vitality in cases involving similar violations: where the violation consists of an employer's discriminatory practice of not hiring women, each exercise of that practice is a "present violation". But where the act of discrimination is limited in time, we cannot characterize every effect of that initial act as

another violation. In the present case, appellees do not claim that they were refused reinstatement because they were women—rather, their contentions regarding United's refusals to reinstate have life only because of their initial separations. And those separations, because appellees did not file timely charges, are now, in the words of *Evans,* "merely unfortunate event(s) in history which [have] no present legal consequences." *Id.*

Under the circumstances of this case, timely filing of charges with the EEOC was an unfulfilled prerequisite to appellees' maintaining a Title VII action. Accordingly, the judgment of the district court will be reversed and remanded, with instructions to the district court to enter an order dismissing the action. Each side to pay her or its own costs.