SPECTOR MOTOR SERVICE, INC. *v.* McLAUGH-
LIN, TAX COMMISSIONER (WALSH, SUBSTI-
TUTED DEFENDANT).

No. 62. Argued November 9, 1944.—Decided December 4, 1944.

*Messrs. J. Ninian Beall* and *Cyril Coleman,* with whom
*Mr. Roland Rice* was on the brief, for petitioner.

*Mr. Frank J. DiSesa,* Assistant Attorney General of
Connecticut, with whom *Mr. Francis A. Pallotti,* Attorney
General, was on the brief, for respondent.

MR. JUSTICE FRANKFURTER delivered the opinion of the
Court.

This is a suit brought in a United States district court
to enjoin the enforcement of a State tax and for a declar-
atory judgment.

The Connecticut Corporation Business Tax Act of 1935,
as amended, imposed on every corporation, not otherwise
specially taxed, carrying on or having the right to carry

on business within the State "a tax or excise upon its franchise for the privilege of carrying on or doing business within the state . . ." Conn. Gen. Stat. Cum. Supp. 1935, § 418c, as amended by Conn. Gen. Stat. Supp. 1939, § 354e. Petitioner, a Missouri corporation with its principal place of business in Illinois, is engaged exclusively in the interstate trucking business. It is neither authorized by Connecticut to do intrastate trucking nor in fact does it engage in it. It maintains two leased terminals in Connecticut solely for the purpose of carrying on its interstate business. At the request of its lessor, it has filed with the Secretary of State in Connecticut a certificate of its incorporation in Missouri, has designated an agent in Connecticut for service of process, and has paid the statutory fee. On this state of facts the State Tax Commissioner determined that petitioner was subject to the Act of 1935, as amended, and assessed the tax against Spector for the years 1937 to 1940. Whereupon petitioner brought this suit in the United States District Court for the District of Connecticut to free itself from liability for the tax. Alleging appropriate grounds for equitable relief, petitioner claims that the "tax or excise" levied by the Act does not apply to it; and in the alternative that, if it should be deemed within the scope of the statute, the tax offends provisions of the Connecticut Constitution as well as the Commerce and Due Process Clauses of the United States Constitution.

The District Court construed the statute to be "a tax upon the exercise of a franchise to carry on intrastate commerce in the state" and therefore not applicable to petitioner. 47 F. Supp. 671, 675. On appeal the Circuit Court of Appeals for the Second Circuit construed the statute to reach all corporations having activity in Connecticut, whether doing or authorized to do intrastate business or, like the petitioner, engaged exclusively in interstate commerce. It further decided all contentions under the Con-

necticut Constitution against the petitioner. And so, the court below found itself compelled "to face directly the main issue whether the tax is in fact an unconstitutional burden on interstate commerce." 139 F. 2d 809, 813. The dissenting judge thus phrased the issue: "we have before us in the barest possible form the effort of a state to levy an excise directly upon the privilege of carrying on an activity which is neither derived from the state, nor within its power to forbid." *Id.* at 822. It was conceded below that if the Connecticut tax was construed to cover petitioner it would run afoul the Commerce Clause, were this Court to adhere to what Judge Learned Hand called "an unbroken line of decisions." On the basis of what it deemed foreshadowing "trends," the majority ventured the prophecy that this Court would change its course, and accordingly sustained the tax. In view of the far-reaching import of such a disposition by the Circuit Court of Appeals we brought the case here. 322 U. S. 720.

Once doubts purely local to the Constitution and laws of Connecticut are resolved against the petitioner there are at stake in this case questions of moment touching the taxing powers of the States and their relation to the overriding national interests embodied in the Commerce Clause. This is so whether the issue be as broad and as bare as the District Court and Judge Learned Hand formulated it, or whether the Connecticut statute carries a more restricted meaning. If Connecticut in fact sought to tax the right to engage in interstate commerce, a long course of constitutional history and "an unbroken line of decisions" would indeed be brought into question. But even if Connecticut seeks merely to levy a tax on the net income of this interstate trucking business for activities attributed to Connecticut, questions under the Commerce Clause still remain if only because of what the court below called "ingenious provisions as to allocation of net income in the case of business carried on partly without the state." 139 F. 2d 809, 812.

We would not be called upon to decide any of these questions of constitutionality, with their varying degrees of difficulty, if, as the District Court held, the statute does not at all apply to one, like petitioner, not authorized to do intrastate business. Nor do they emerge until all other local Connecticut issues are decided against the petitioner. But even if the statute hits aspects of an exclusively interstate business, it is for Connecticut to decide from what aspect of interstate business she seeks an exaction. It is for her to say what is the subject matter which she has sought to tax and what is the calculus of the tax she seeks. Every one of these questions must be answered before we reach the constitutional issues which divided the court below.

Answers to all these questions must precede consideration of the Commerce Clause. To none have we an authoritative answer. Nor can we give one. Only the Supreme Court of Errors of Connecticut can give such an answer. But this tax has not yet been considered or construed by the Connecticut courts. We have no authoritative pronouncements to guide us as to its nature and application. That the answers are not obvious is evidenced by the different conclusions as to the scope of the statute reached by the two lower courts. The Connecticut Supreme Court may disagree with the District Court and agree with the Circuit Court of Appeals as to the applicability of the statute. But this is an assumption and at best "a forecast rather than a determination." *Railroad Commission* v. *Pullman Co.*, 312 U. S. 496, 499. Equally are we without power to pass definitively on the other claims urged under Articles I and II of the Connecticut Constitution.[1] If any should prevail, our constitutional

---

[1] For instance, petitioner claims that no standard for assessment is set up in the statute so that the executive officer is acting in a legislative capacity in violation of Article II; that failure to allow a deduction for rent violates §§ 1 and 12 of Article I. In addition he

issues would either fall or, in any event, may be formulated in an authoritative way very different from any speculative construction of how the Connecticut courts would view this law and its application. *Watson* v. *Buck,* 313 U. S. 387, 401–402.

If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality—here the distribution of the taxing power as between the State and the Nation—unless such adjudication is unavoidable. And so, as questions of federal constitutional power have become more and more intertwined with preliminary doubts about local law, we have insisted that federal courts do not decide questions of constitutionality on the basis of preliminary guesses regarding local law. *Railroad Commission* v. *Pullman Co., supra; Chicago* v. *Fieldcrest Dairies,* 316 U. S. 168; *In re Central R. Co. of New Jersey,* 136 F. 2d 633. See also *Burford* v. *Sun Oil Co.,* 319 U. S. 315; *Meredith* v. *Winter Haven,* 320 U. S. 228, 235; *Green* v. *Phillips Petroleum Co.,* 119 F. 2d 466; *Findley* v. *Odland,* 127 F. 2d 948; *United States* v. *150.29 Acres of Land,* 135 F. 2d 878. Avoidance of such guesswork, by holding the litigation in the federal courts until definite determinations on local law are made by the state courts, merely heeds this time-honored canon of constitutional adjudication.

We think this procedure should be followed in this case. The District Court had jurisdiction to entertain this bill and to give whatever relief is appropriate despite the Johnson Act [2] and *Great Lakes Dredge Co.* v. *Huff-*

---

claims that the tax was assessed under the wrong subsection of the statute—§ 420c (b) instead of § 420c (a).

[2] Act of August 21, 1937, 50 Stat. 738, 28 U. S. C. § 41 (1). " . . . no district court shall have jurisdiction of any suit to enjoin, suspend, or restrain the assessment, levy, or collection of any tax imposed by or pursuant to the laws of any State where a plain, speedy, and

*man,* 319 U. S. 293, because of the uncertainty surrounding the adequacy of the Connecticut remedy. See *Waterbury Savings Bank* v. *Lawler,* 46 Conn. 243; *Wilcox* v. *Town of Madison,* 106 Conn. 223, 137 A. 742. But there is no doubt that Connecticut makes available an action for declaratory judgment for the determination of those issues of Connecticut law involved here. *Charter Oak Council, Inc.* v. *Town of New Hartford,* 121 Conn. 466, 185 A. 575; *Conzelman* v. *City of Bristol,* 122 Conn. 218, 188 A. 659; *Walsh* v. *City of Bridgeport,* 2 Conn. Supp. 88.

We therefore vacate the judgment of the Circuit Court of Appeals and remand the cause to the District Court with directions to retain the bill pending the determination of proceedings to be brought with reasonable promptitude in the State court in conformity with this opinion.

MR. JUSTICE DOUGLAS concurs in the result.

MR. JUSTICE BLACK dissents.

---

efficient remedy may be had at law or in equity in the courts of such State."