SPECTOR MOTOR SERVICE, INC. v. WALTER W. WALSH, TAX COMMISSIONER OF THE STATE OF CONNECTICUT

SUPERIOR COURT      HARTFORD COUNTY      FILE No. 72593

Memorandum filed August 14, 1947.

*Day, Berry & Howard,* of Hartford, for the Plaintiff.

*F. J. DiSesa,* Assistant Attorney General, for the Defendant.

COMLEY, J. The plaintiff was incorporated in 1933 in the state of Missouri. Soon thereafter it changed its principal place of business, originally in St. Louis, to Chicago. The plaintiff's business is a type of interstate trucking known as the "two-way haul." Under a permit from the interstate commerce commission it is authorized to haul freight in either direction between a defined zone in the midwest and another defined zone on the eastern seaboard. The eastern zone includes Connecticut.

In addition to terminals in St. Louis, Chicago and New York City, the plaintiff maintains terminals upon property leased by it in New Britain and Bridgeport. It owns no real estate in Connecticut. The only tangible personal property owned by it in Connecticut consists of office furntiure and equipment worth about $2000.

To carry on its interstate business the plaintiff uses about 85 tractors and 115 trailers. Most of these units are leased from the Wallace Transport Company, an Illinois corporation. All the stock of the Wallace Transport Company is owned by the same four persons who own all the plaintiff's stock, they being the plaintiff's two principal officers and their wives. The chief reason for the organization of the Wallace Transport Company lay in the advantage in lower rates that could be obtained by an Illinois corporation in the issuance of license plates by the state of Illinois. All the truck drivers are employees of the plaintiff.

When an eastbound truck carries a full truck load consigned to one customer in Connecticut, the load is delivered directly to that customer at his place of business. If the truck carries several shipments directed to two or more customers, it is unloaded at the Bridgeport or New Britain terminal, the shipments are sorted out and delivered by smaller pick-up truck to the different customers. Similarly, if a Connecticut shipper has a full truck load going west, the whole load will be placed on board one of the interstate trucks at the shipper's place of business and thence carried west. If the Connecticut shipper has less than a truck load shipment, it is carried by pick-up truck to the Bridgeport or New Britain terminal and there loaded together with other shipments on board an interstate truck. The pick-up trucks used by the plaintiff in Connecticut are leased by it from the owners. Some of them are registered in the plaintiff's name.

The plaintiff has a total of 278 employees, of whom 27 work in Connecticut, 10 in Bridgeport and 17 in New Britain. All wages and other expenses are paid from the Chicago office. It has maintained a bank account at Bridgeport for the deposit of cash payments made by customers but no one in Connecticut has the power to draw on this account. All payments made to the plaintiff by check, whether in Bridgeport or New Britain, are mailed to Chicago and all cash payments made in New Britain are converted into bank drafts and sent to Chicago.

Among the plaintiff's employees in Connecticut are several so-called "salesmen" whose function it is to call upon those who use, or may use, the plaintiff's service and give information and advice as to rates, routes and other matters connected with that service.

In 1934, upon the insistence of its New Britain landlord, the plaintiff filed with the secretary of the state of Connecticut a copy of its certificate of incorporation and designated that official its agent in Connecticut to accept service of process. Then and since it has paid the annual fee of $50 required by § 3495 of the General Statutes.

The plaintiff has never applied for a certificate of public necessity and convenience from the public utilities commission of the state of Connecticut and it has never been required to obtain such a certificate. Its transportation business is entirely and exclusively interstate. By weight and volume, the shipments out of Connecticut are about twice as great as the shipments into Connecticut.

Upon these facts the defendant claims that the plaintiff is subject to the Corporation Business Tax Act of 1935 provided for in §§ 416c et seq. Cum. Sup. 1935, and in §§ 353e et seq., Cum. Sup. 1939. In accordance with the provisions of 420c and 356e the tax commissioner has ascertained "the proportion of the trade or business carried on within the State" by applying the complicated "allocation fraction" therein defined and has assessed against the plaintiff for the years 1936-1940 taxes which, with interest and penalties, amount to $7,795.50 as of January, 1942.

In 1942, the plaintiff sought to enjoin collection of these taxes by an action for injunctive relief in the United States District Court. In that case (47 F. Sup. 671), Judge Smith held that the primary question was whether the corporation business tax statutes were intended to apply to a corporation such as the plaintiff engaged exclusively in interstate commerce, for if they were applicable, they would be unconstitutional as imposing a burden on interstate commerce in violation of Article I, § 8, of the United States constitution. Applying the familiar principle that where there are two possible interpretations of a statute, that one will be adopted which accords with constitutional requirements, Judge Smith held that the act was not intended to apply to plaintiff and granted an injunction against collection of the tax.

The tax commisioner then appealed to the United States Cir-
cuit Court of Appeals. By a divided court, with Judge Learned
Hand dissenting, Judge Smith's decision was reversed. See 139
F 2d 809. The majority of the court, speaking through Judge
Charles E. Clark, held that the act was intended to, and did,
apply to the plaintiff and that, while a considerable number of
decisions by the United States Supreme Court had held that such
a tax upon interstate commerce was unconstitutional, more re-
cent utterances by that court upon analogous questions indicat-
ed a trend against those decisions and a probability that such a
tax would now be sustained.

The plaintiff thereupon appealed to the United States Su-
preme Court, which declined to pass upon the constitutional
questions on the ground that the federal courts could not con-
sider them until the Connecticut courts had first decided the
proper construction to be accorded the statute and whether or
not it was intended to apply to the plaintiff. See 323 U. S. 101.
Thereupon the present action for a declaratory judgment was
commenced, presumably to lay a foundation for the ultimate
decision by the United States Supreme Court of the important
constitutional issue involved.

There would be no point in a review by a trial court of the
deep and far-reaching questions involved in this case, involving
as they do, a branch of interstate commerce which is growing
steadily in size and importance and may come to rival the rail-
roads in economic importance to the nation. All those questions
and the myriad authorities which bear upon them will be found
in the three opinions above referred to. I think it sufficient for
me to say that after consideration of those authorities and of
the able and extensive briefs of counsel I have come to the con-
clusion that the act was intended to apply to the plaintiff and
that in so far as it does apply to the plaintiff it is unconstitu-
tional. I am unable to follow the plaintiff's claim that the taxes
were computed on an improper base.

A declaratory judgment may be entered as follows:

1. That the Corporation Business Tax Act of 1935 as amend-
ed was intended to apply, and does apply, to the plaintiff as a
carrier engaged exclusively in interstate commerce.

2. That, as applied to the plaintiff as a carrier engaged ex-
clusively in interstate commerce, the act is unconstitutional and
void because in violation of Article I, § 8, of the constitution of

the United States and, therefore, the taxes assessed against the plaintiff are invalid and may not be collected.

3. That as applied to the plaintiff as a carrier engaged exclusively in interstate commerce the act is not unconstitutional and void under §§ 1 and 12 of Article I and under Article II of the constitution of Connecticut.

4. That the assessments made by the defendant are not illegal because they were computed on an improper base.